CHRISTOPHER R. COPELAND, Bar No. CC4451
  ccopeland@lsnyc.org
**BRONX LEGAL SERVICES**
369 E. 148TH STREET, 2ND FLOOR
BRONX, NEW YORK 10455
TEL/FAX:  718-928-3726
*Attorney for Plaintiff Willie Espino, Jr.,*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILLIE ESPINO, JR., | Civ. Case No. 1:18-cv-9303 |
| Plaintiff, | |
| v. | **COMPLAINT FOR:** |
| NEW YORK CITY HOUSING AUTHORITY; STANLEY BREZENOFF, as acting Chairman, in his official capacity | 1. **VIOLATION OF FAIR HOUSING ACT, 42 U.S.C. §§ 3601 *ET SEQ.* (DISABILITY DISCRIMINATION AND RETALIATION)** |
| Defendants. | 2. **VIOLATION OF AMERICANS WITH DISABILITIES ACT, 42 U.S.C. §§ 12101 *ET SEQ.* (DISABILITY DISCRIMINATION AND RETALIATION)** |

3. **VIOLATION OF REHABILITATION ACT § 504, 29 U.S.C. § 794 (DISABILITY DISCRIMINATION AND RETALIATION)**

4. **VIOLATION OF NEW YORK STATE HUMAN RIGHTS LAW, N.Y. EXEC. LAW § 290 *ET SEQ.* (DISABILITY DISCRIMINATION AND RETALIATION)**

5. **VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW, N.Y.C. ADMIN. CODE § 8-101 *ET SEQ.* (DISABILITY DISCRIMINATION AND RETALIATION)**

6. **VIOLATION OF NEW YORK'S REAL PROPERY LAW § 223-b (RETALIATION)**

**DEMAND FOR JURY TRIAL**

**PRELIMINARY STATEMENT**

1.      This case is about disability-based discrimination and retaliation in public housing.

2.      Plaintiff WILLIE ESPINO, JR., a tenant in one of Defendant NEW YORK CITY HOUSING AUTHORITY ("NYCHA")'s public housing developments, is a wheelchair user.  For almost a decade, and to date, NYCHA has failed to reasonably accommodate Mr. Espino's disability.  In particular, NYCHA has refused to either install a wheelchair ramp at Mr. Espino's building or transfer him to a wheelchair-accessible building.

3.      Without wheelchair access, Mr. Espino has become a prisoner in his own home. He cannot leave the building unless his home health aide is available and willing to assist him in and out of the building.  Particularly, to assist Mr. Espino out of the building, his home health aide must guide Mr. Espino into the elevator, when the elevator is operable, while also carrying a five-by-twelve inch piece of plywood, which Mr. Espino uses as a makeshift wheelchair ramp.  Once on the ground floor, the home health aide must then lay the makeshift ramp over a flight of three large stairs that lead to the building's entrance door, and wheel Mr. Espino's 350-pound wheelchair down the ramp.  Finally, the home health aide must lay the makeshift ramp over the two flights of stairs that lead from the building's entrance to the sidewalk, and again wheel Mr. Espino's wheelchair down the ramp.  And when the home health aide is unavailable, Mr. Espino cannot leave the building unless he receives assistance from a neighbor.

4.      NYCHA has violated, and continues to violate, Mr. Espino's right to equal use and enjoyment of his home, as required by the Fair Housing Amendments Act, the Americans with Disabilities Act, the Rehabilitation Act, the New York State and New York City Human Rights Law, and New York's Real Property Law.

5.      In violation of these same federal and state laws, NYCHA has retaliated against Mr. Espino for exercising his rights by revoking his apartment transfer just approximately two weeks after a Bronx Housing Court judge ordered NYCHA to install a temporary wheelchair ramp.

6.      Accordingly, Mr. Espino seeks relief from this Court.

## JURISDICTION AND VENUE

7.   This Court has original, federal question jurisdiction over the subject matter of Mr. Espino's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.  It has supplement jurisdiction over Mr. Espino's state law claims pursuant to 28 U.S.C. § 1367, because the state law claims arise out of a common nucleus of operative fact.

8.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because it lies in the judicial district where the events or omissions giving rise to the claims occurred, where Mr. Espino resides, and where NYCHA maintains its principal place of business.

## PARTIES

9.   Plaintiff WILLIE ESPINO, JR., is disabled and uses a wheelchair.  He suffers chronic arthritis, various spinal cord disorders, and the effects of a stroke and full hip replacement. Mr. Espino is 61 years old, and a veteran of the United States Marines and National Guard.  Mr. Espino has lived at 414 Morris Avenue, Apartment 5D, Bronx, New York 10451—a building located in NYCHA's Patterson Houses project—for seven years.

10.   Defendant NYCHA owns and operates the premises where Mr. Espino resides. NYCHA is the largest municipal public housing agency in the United States, operating over 300 housing developments, consisting of over 2,400 residential buildings, with over approximately 175,000 apartments located throughout New York City.  NYCHA was created pursuant to Section 401 of New York State's Public Housing Law.  It is run by a chairperson and six other members of a board, all appointed by the mayor of New York City.  In addition to local funds, NYCHA receives funding from the United States Department of Housing and Urban Development.  It maintains its principal place of business at 250 Broadway, New York, New York 10007.

11.   Defendant STANLEY BREZENOFF is currently the acting chairman of NYCHA, located at 250 Broadway, New York, New York 10007.

//

//

//

3

## STATUTORY AND REGULATORY SCHEME

### Federal Law

12.     Title VIII of the Civil Rights Act of 1968, referred to as the Fair Housing Act (the "FHA"), as amended by the Fair Housing Amendments Act of 1988, prohibits disability-based discrimination against any person "in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling." 42 U.S.C. § 3604(f)(2).

13.     In particular, disability-based discrimination includes "a refusal to permit . . . reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises," and "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(a)-(b).

14.     The FHA and federal regulations define disability or "handicap" as "a physical or mental impairment which substantially limits one or more of such person's major life activities." 42 U.S.C. § 3602(h)(1); *see* 24 C.F.R. § 100.201. And "major life activities" are functions such as "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 24 C.F.R. § 100.201(b).

15.     Dwelling units must be accessible by the disabled person so that they may use and enjoy all parts of the building, including public and common use areas. *See* 24 C.F.R. §§ 8.4, 8.24, and 966.7. A dwelling unit is "accessible" with respect to public and common use areas when those areas can be "approached, entered, and used by individuals with physical disabilities." 24 C.F.R. § 100.201; *see also* 24 C.F.R. §§ 8.4, 8.24, and 966.7. "Common use areas" means "rooms, spaces or elements inside or outside of a building that are made available for the use of residents of a building or the guests thereof. *Id.* These areas include hallways, lounges, lobbies, laundry rooms, refuse rooms, mail rooms, recreational areas and passageways among and between

4

buildings." *Id.* "Public use areas" means "interior or exterior rooms or spaces of a building that are made available to the general public." *Id.*

16. Title II of the Americans with Disabilities Act (the "ADA") of 1990, 42 U.S.C. § 12181 *et seq.*, and Section 504 of the Rehabilitation Act of 1974, 29 U.S.C. § 794, similarly prohibit disability-based discrimination, and require local governments to make reasonable accommodations in their rules, policies, practices, and services in order to afford disabled persons an equal opportunity to use and enjoy a dwelling. *See also, e.g.*, 24 C.R.F. §§ 8.4, 8.24, and 966.7.

17. Further, the FHA, ADA, and Rehabilitation Act prohibit retaliation against such disabled persons for engaging in protected activity. *See* 42 U.S.C. §§ 3617, 12203; 29 U.S.C. § 794.

**State Law**

18. The New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.* provides, in pertinent part, that:

> It shall be unlawful discriminatory practice for the owner . . . or managing agent of . . . a housing accommodation . . . or any agent or employee thereof . . . [t]o discriminate against any person because of . . . disability . . . in the terms, conditions or privileges of sale, rental or lease of any such housing accommodation or in the furnishing of facilities or services on connection therewith.

N.Y. Exec. Law § 296(5)(i)-(ii). The NYSHRL also provides that:

> It shall be an unlawful discriminatory practice for the owner . . . or managing agent of . . . housing accommodations . . . [t]o refuse to make reasonable accommodations in rules, policies, practices or services, when such accommodations may be necessary to afford said person with a disability equal opportunity to use and enjoy a dwelling . . .

N.Y. Exec. Law § 296 (18)(2).

19. The NYSHRL defines "disability" as "a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or

5

laboratory diagnostic techniques, or (b) a record of such impairment or (c) a condition regarded by others as such an impairment." N.Y. Exec. Law § 292(21)(a).

20.    The NYSHRL defines "housing accommodation" as "any building, structure, or portion thereof which is used or occupied . . . as the home, residence or sleeping place of one or more human beings." N.Y. Exec. Law § 292(10).

21.    The New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*, also affords protection to disabled individuals against discrimination in housing. The NYCHRL provides, in relevant part:

> It shall be unlawful discriminatory practice for the owner . . . or managing agent of . . . a housing accommodation, constructed or to be constructed, or any agent or employee thereof . . . [t]o discriminate against any person because of such person's actual or perceived . . . disability . . . in the terms, conditions or privileges of the sale, rental or lease of any such housing accommodation . . . or in the furnishing of facilities or services in connection therewith.

N.Y.C. Admin. Code § 8-107(5)(a).

22.    Disability is further defined in the NYCHRL as "physical, medical, mental or psychological impairment[,]" including

> An impairment of any system of the body; including, but not limited to: the neurological system; the musculoskeletal system; the special sense organs and respiratory organs, including, but not limited to, speech organs; the cardiovascular system; the reproductive system; the digestive and genito-urinary systems; the hemic and lymphatic systems; the immunological systems; the skin; and the endocrine system.

N.Y.C. Admin. Code § 8-102 (16)(b).

23.    The NYCHRL defines "housing accommodation" as "any building, structure, or portion thereof which is used or occupied or is intended, arranged or designed to be used or occupied, as the home, residence or sleeping place of one or more human beings." N.Y.C. Admin. Code § 8-102(10).

6

24.     Both the NYSHRL and the NYCHRL also contain enhanced retaliation provisions which prohibit retaliation against disabled individuals who have exercised their rights under the law. *See* N.Y.C. Admin. Code § 8-107(7); N.Y. Exec. Law § 296 (7).

25.     Finally, New York's Real Property Law ("RPL") § 223-b also prohibits landlords from "substantially alter[ing] the terms of [a] tenancy in retaliation for . . . [a]ctions taken in good faith, by or in behalf of the tenant, to secure or enforce any rights under the lease or rental agreement, under [RPL § 235-b], or under any other law of the state of New York, or of its governmental subdivisions, or of the United States."

## NYCHA's Administrative Policy

26.     NYCHA's policies and procedures for reasonable accommodations in its public housing projects are set forth in NYCHA's Management Manual and Standard Procedure Manual.

27.     The policy provides reasonable accommodations for NYCHA residents and applicants with disabilities. The policy defines a reasonable accommodation as a change, modification or alteration in policy, procedure, practice or program, that provides a qualified individual with a disability the same opportunity, as exists for non-disabled individuals, to participate in, or benefit from, a program or activity. The policy requires NYCHA to consider all accommodations regardless of whether there is a policy or procedure regarding the type of accommodation requested, but the requested accommodation cannot result in an undue financial or administrative burden or create a fundamental change in a program.

28.     Under the policy, a resident or applicant can make a reasonable accommodation request at any time. NYCHA staff is required to provide a form to a person making such a request, but the person need not use the form in order to make a request. NYCHA must process the request within five days. If the request cannot be processed within five days, the request must be referred to the Public Housing Reasonable Accommodation Coordinator ("PHRAC"), who then must render a determination within 30 days.

29.     The Standard Procedure Manual states that existing NYCHA policies and procedures already directly address such reasonable accommodations as modifying buildings to

7

install ramps, and issuing apartment transfers to an accessible apartment, an elevator building, and an apartment on a low floor.

## STATEMENT OF FACTS

30.     In 2011, Mr. Espino moved into the subject apartment, which is situated on the fourth floor of an elevator building in NYCHA's Patterson Houses.

31.     Outside the entrance to the building are two flights of stairs, and inside the entrance door is a third flight of stairs, which leads from the entrance door, through a small vestibule, to the building's lobby. From the lobby, the building's residents may then access the elevator up to their apartments. Neither the exterior nor the interior of the building contain a wheelchair ramp.

32.     At the time that Mr. Espino moved into the subject apartment he used, and to date continues to use, a motorized wheelchair. The wheelchair weighs approximately 350 pounds.

33.     In the absence of a wheelchair ramp, Mr. Espino has used and continues to use, with the help of an aide or a neighbor, a flimsy, five-by-twelve inch piece of plywood to ascend and descend the stairs on the ground floor of the building. Mr. Espino's makeshift ramp presents two dangers: it slips down and across the stairs, and it bends under the weight of Mr. Espino and the wheelchair.

34.     Over the past seven years, Mr. Espino has faced numerous difficulties resulting from the lack of wheelchair access in the building.

35.     First, Mr. Espino's first wheelchair, which he had to replace, sustained prolonged wear and tear from use on his makeshift ramp, a rough and splintered piece of plywood, and from the hard drop the wheelchair must make off the ramp.

36.     Second, Mr. Espino lost the services of two home health aides. He uses the services of a home health aide during daytime hours, and during those hours the home health aide assists him in ascending and descending the stairs. In particular, to assist Mr. Espino out of the building, his home health aide must guide Mr. Espino into the elevator, when the elevator is operable, while also carrying a five-by-twelve inch slab of plywood, which Mr. Espino uses as a makeshift wheelchair ramp. Once on the ground floor, the home health aide must then lay the

8

makeshift ramp over a flight of three large stairs that lead to the building's entrance door, and wheel Mr. Espino's 350-pound wheelchair down the ramp. Finally, the home health aide must lay the makeshift ramp over the two flights of stairs that lead from the building's entrance to the sidewalk, and again wheel Mr. Espino's wheelchair down the ramp. On several occasions, though, the home health aide refused to assist Mr. Espino up and down the stairs, given the dangers his makeshift ramp presents. Unable to fully assist Mr. Espino because of these dangers, two of Mr. Espino's home health aides quit.

37. Third, during the hours when Mr. Espino has no home health aide, he has to rely on neighbors for assistance. On countless occasions, Mr. Espino has had to wait in the building's lobby for hours to receive assistance from neighbors.

38. Fourth, on the numerous occasions when either the home health aide or neighbors were unwilling to assist Mr. Espino, Mr. Espino missed or had to postpone medical appointments for various treatments and surgeries because he could not exit the building. Even more, he was unable to leave his building for basic necessities such as groceries and laundry.

39. In just the past six months, for instance, Mr. Espino has missed several appointments because of NYCHA's failure to accommodate his disability. In April 2018, Mr. Espino missed an appointment for medical treatment because his home health aide had failed to show up, and he could not find anyone to help him with his makeshift ramp. On two more occasions in May 2018, he missed medical appointments because his home health aide had again failed to show up, and he was unable to find any assistance exiting the building.

40. Since as far back as 2011, NYCHA has been aware that Mr. Espino uses a wheelchair. Mr. Espino was in a wheelchair when he appeared at the Patterson Houses management office in 2011 to interview for the apartment. Mr. Espino was in a wheelchair when later that same year he returned to the management office to request the installation of a wheelchair ramp.

41. In 2011, Mr. Espino requested that NYCHA either install a wheelchair ramp at his building or transfer him to a lower-floor apartment in a wheelchair-accessible building. The

housing assistant denied Mr. Espino's request for a wheelchair ramp, and cautioned him that he would have to wait a long period of time to be transferred to another apartment.

42. In accordance with NYCHA's procedures, Mr. Espino requested either a wheelchair ramp or an apartment transfer several more times between 2012 and 2015. Each time, employees in the Patterson Houses management office denied his request.

43. In or around 2015, NYCHA finally offered to transfer Mr. Espino to another apartment, and Mr. Espino accepted. However, the transfer was contingent upon an apartment becoming vacant—an event which, according to NYCHA, has yet to occur.

44. On September 12, 2017, Mr. Espino commenced an housing conditions action against NYCHA in Bronx Housing Court under the index number LT-808176-14-BX. Mr. Espino alleged in the petition that NYCHA had discriminated against him on the basis of his disability, and its failure to reasonably accommodate his disability had deprived him of the full use and enjoyment of his apartment in violation of the New York City Housing Maintenance Code. Mr. Espino sought to compel NYCHA to install a wheelchair ramp.

45. On September 18, 2017, following a court ordered inspection, the Department of Housing and Preservation Development found, according to Judge Enedina Pilar Sanchez, the presiding judge, six different conditions, including the lack of a wheelchair ramp at the building.

46. On October 2, 2017, Judge Sanchez ordered NYCHA to install a wheelchair ramp as required by law within 30 days of the order.

47. On November 2, 2017, the parties returned to housing court, and NYCHA contended that no law required it to install a wheelchair ramp at Mr. Espino's building. Judge Sanchez adjourned the matter for NYCHA to reduce its position to writing in the form of a summary judgment motion.

48. On January 10, 2018, Judge Sanchez denied NYCHA's summary judgment motion, and held a bench trial. Only Mr. Espino testified. Mr. Espino described the difficulty of living in a building that lacks wheelchair accessibility. He further testified that he had requested an apartment transfer each year from 2012 through 2015, and that NYCHA had refused his requests. NYCHA presented no witnesses.

49.    On April 24, 2018, Judge Sanchez issued a written decision after trial, finding that NYCHA's failure to install a wheelchair ramp violated the New York City Building Code, and ordering NYCHA to install a temporary ramp within 30 days of her decision.  Judge Sanchez declined, however, to decide whether NYCHA's conduct amounted to discrimination, because, as she explained, she lacked jurisdiction under the New York City Civil Court Act § 110 to reach the issue.

50.    In or around May 2018, NYCHA notified Mr. Espino that it had revoked his apartment transfer.

51.    On May 17, 2018, NYCHA filed a notice of appeal of Judge Sanchez's decision, and invoked an automatic stay of Judge Sanchez's order pursuant to the New York Civil Practice Law and Rules § 5519(a)(1).

52.    On July 11, 2018, Bronx Legal Services served NYCHA with a notice of claim, notifying NYCHA of Mr. Espino's intent to file the instant action, and setting forth the parties, the facts, and the legal claims.

53.    NYCHA failed to comply with Judge Sanchez's order to install a temporary wheelchair ramp within 30 days of her order.

54.    In or around early August 2018, NYCHA installed a temporary ramp at the exterior of the subject building.  The temporary ramp does not, however, cover the staircase just inside the entrance door.  Plaintiff continues to need his makeshift ramp to ascend and descend the stairs between the lobby and the building's entrance.

55.    To date, NYCHA has failed to install a permanent wheelchair ramp at Mr. Espino's building.

56.    To date, NYCA has failed to transfer Mr. Espino to another apartment in a wheelchair accessible building.

//

//

//

//

11

**FIRST CLAIM FOR RELIEF**
*(Failure to Provide Reasonable Accommodation in Violation of the Fair Housing Amendments Act, 42 U.S.C. §§ 3601, et seq.)*

57.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1-55 of this Complaint as if fully set forth herein.

58.    Section 3604 of the Fair Housing Amendments Act prohibits discrimination against any person with a disability or handicap "in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling." 42 U.S.C. § 3604(f)(2).

59.    Disability-based discrimination under the FHA includes "a refusal to permit . . . reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises," and "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(a)-(b).

60.    Plaintiff is a "person" with a "handicap" or disability within the meaning of 42 U.S.C. § 3602.

61.    NYCHA and its employees knew or should have known that Mr. Espino was handicapped or disabled.

62.    Plaintiff's disability, and use of a wheelchair, requires that NYCHA provide a reasonable accommodation in order to afford Mr. Espino an equal opportunity to use and enjoy his apartment and the apartment building.

63.    NYCHA refused, and continues to refuse, to make the requisite reasonable accommodations for Mr. Espino.

**SECOND CLAIM FOR RELIEF**
*(Retaliation in Violation of the Fair Housing Amendments Act, 42 U.S.C. §§ 3601, et seq.)*

64.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1-55 of this Complaint as if fully set forth herein.

12

65. NYCHA revoked Plaintiff's apartment transfer in retaliation for his commencement of a housing court case against NYCHA in violation of the Fair Housing Amendments Act.

66. Section 3617 of the Fair Housing Amendments Act makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title."

67. Plaintiff's commencement of a housing court case against NYCHA constitutes protected activity under the Fair Housing Amendments Act.

68. NYCHA's revocation of Plaintiff's apartment transfer constitutes an adverse action.

69. NYCHA revoked Plaintiff's apartment transfer only two weeks after Bronx Housing Court found in Plaintiff's favor in the housing court case, which establishes a presumptive causal connection between Plaintiff's protected activity and NYCHA's adverse action.

## THIRD CLAIM FOR RELIEF
*(Failure to Provide Reasonable Accommodation in Violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq.)*

70. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1-55 of this Complaint as if fully set forth herein.

71. Tittle II of the Americans with Disabilities Act provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

72. Plaintiff is a qualified individual with a disability within the meaning of 42 U.S.C. § 12131(2).

73. NYCHA is a public entity within the meaning of 42 U.S.C. § 12131(1).

13

74. NYCHA denied Plaintiff the opportunity to participate in or benefit from NYCHA's services, programs, or activities, or otherwise discriminated against Plaintiff because of his disability.

## FOURTH CLAIM FOR RELIEF
*(Retaliation in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq.)*

75. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1-55 of this Complaint as if fully set forth herein.

76. NYCHA revoked Plaintiff's apartment transfer in retaliation for his commencement of a housing court case against NYCHA in violation of the Americans with Disabilities Act.

77. Section 12203 of the Americans with Disabilities Act prohibits retaliation "against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter. 42 U.S.C. § 12203(a).

78. Plaintiff's commencement of a housing court case against NYCHA constitutes protected activity under the Americans with Disabilities Act.

79. NYCHA's revocation of Plaintiff's apartment transfer constitutes an adverse action.

80. NYCHA revoked Plaintiff's apartment transfer only two weeks after Bronx Housing Court found in Plaintiff's favor in the housing court case, which establishes a presumptive causal connection between Plaintiff's protected activity and NYCHA's adverse action.

## FIFTH CLAIM FOR RELIEF
*(Failure to Provide Reasonable Accommodation in Violations of the Rehabilitation Act, 29 U.S.C. § 794)*

81. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1-55 of this Complaint as if fully set forth herein.

82. Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability,

be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

83.    Plaintiff is a qualified individual with a disability within the meaning of 29 U.S.C. § 794.

84.    NYCHA, a public housing authority, is a public entity and is federally funded within the meaning of 29 U.S.C. § 794.

85.    NYCHA denied Plaintiff the opportunity to participate in or benefit from NYCHA's services, programs, or activities, or otherwise discriminated against Plaintiff solely because of his disability.

### SIXTH CLAIM FOR RELIEF
*(Retaliation in Violation of the Rehabilitation Act, 29 U.S.C. § 794)*

86.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1-55 of this Complaint as if fully set forth herein.

87.    NYCHA revoked Plaintiff's apartment transfer in retaliation for his commencement of a housing court case against NYCHA in violation of the Rehabilitation Act.

88.    Like the Fair Housing Amendments Act and the Americans with Disabilities Act, the Rehabilitation Act prohibits retaliation and uses the same standards for determining violations. 29 U.S.C. § 794(d).

89.    Plaintiff's commencement of a housing court case against NYCHA constitutes protected activity under the Rehabilitation Act.

90.    NYCHA's revocation of Plaintiff's apartment transfer constitutes an adverse action.

91.    NYCHA revoked Plaintiff's apartment transfer only two weeks after Bronx Housing Court found in Plaintiff's favor in the housing court case, which establishes a presumptive causal connection between Plaintiff's protected activity and NYCHA's adverse action.

//

//

15

## SEVENTH CLAIM FOR RELIEF
*(Failure to Provide Reasonable Accommodation in Violation of the New York State Human Rights Law, N.Y. Exec. Law § 290, et seq.)*

92.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1-55 of this Complaint as if fully set forth herein.

93.    The New York State Human Rights Law provides that it is "an unlawful discriminatory practice for the owner, lessee, sub-lessee, assignee, managing agent of, or other person having the right of ownership of or possession of or the right to rent or lease housing accommodations . . . [t]o refuse to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford said person with a disability equal opportunity to use and enjoy a dwelling." N.Y. Exec. Law § 296(18)(2).

94.    Plaintiff is a qualified individual with a disability within the meaning of N.Y. Exec. Law § 292.

95.    Plaintiff's disability, and use of a wheelchair, requires that NYCHA provide a reasonable accommodation in order to afford Mr. Espino an equal opportunity to use and enjoy his apartment and the apartment building.

96.    NYCHA has refused and continues to refuse to make a reasonable accommodation for Plaintiff's disability.

## EIGHTH CLAIM FOR RELIEF
*(Retaliation in Violation of the New York State Human Rights Law, N.Y. Exec. Law § 290, et seq.)*

97.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1-55 of this Complaint as if fully set forth herein.

98.    NYCHA revoked Plaintiff's apartment transfer in retaliation for his commencement of a housing court case against NYCHA in violation of the New York State Human Rights Law.

99.    The New York City Human Rights Law makes it an "unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this

article or because he or she has filed a complaint, testified or assisted in any proceeding under this article." N.Y.C. Admin. Code § 8-107(7); N.Y. Exec. Law § 296(7).

100.    Plaintiff's commencement of a housing court case against NYCHA constitutes protected activity under the New York State Human Rights Law.

101.    NYCHA's revocation of Plaintiff's apartment transfer constitutes an adverse action.

102.    NYCHA revoked Plaintiff's apartment transfer only two weeks after Bronx Housing Court found in Plaintiff's favor in the housing court case, which establishes a presumptive causal connection between Plaintiff's protected activity and NYCHA's adverse action.

## NINTH CLAIM FOR RELIEF
### (Failure to Provide Reasonable Accommodation in Violation of the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107)

103.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1-55 of this Complaint as if fully set forth herein.

104.    The New York City Human Rights Law provides that "[i]t shall be an unlawful discriminatory practice for the owner . . . or managing agent . . . [t]o refuse to . . . rent, lease, approve the . . . rental or lease or otherwise deny to or withhold from any person . . . such a housing accommodation or an interest therein because of the actual or perceived . . . disability. N.Y.C. Admin. Code § 8-107(5)(a).

105.    The New York City Human Rights Law further requires that "any person prohibited by the provisions of this section from discriminating on the basis of disability shall make reasonable accommodation to enable a person with a disability to . . . enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity. N.Y.C. Admin. Code § 8-107(5)(a)

106.    Plaintiff is a qualified individual with a disability within the meaning of N.Y.C Admin. Code § 8-107.

17

107. Plaintiff's disability, and use of a wheelchair, requires that NYCHA provide a reasonable accommodation in order to afford Mr. Espino an equal opportunity to use and enjoy his apartment and the apartment building.

108. NYCHA has refused and continues to refuse to make a reasonable accommodation for Plaintiff's disability.

## TENTH CLAIM FOR RELIEF
### *(Retaliation in Violation of the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107)*

109. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1-55 of this Complaint as if fully set forth herein.

110. NYCHA revoked Plaintiff's apartment transfer in retaliation for his commencement of a housing court case against NYCHA in violation of the New York City Human Rights Law.

111. The New York City Human Rights Law makes it an "unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter, (iv) assisted the commission or the corporation counsel in an investigation commenced pursuant to this title, or (v) provided any information to the commission pursuant to the terms of a conciliation agreement made pursuant to section 8-115 of this chapter. The retaliation or discrimination complained of under this subdivision need not result in an ultimate action with respect to employment, housing or a public accommodation or in a materially adverse change in the terms and conditions of employment, housing, or a public accommodation, provided, however, that the retaliatory or discriminatory act or acts complained of must be reasonably likely to deter a person from engaging in protected activity." N.Y.C. Admin. Code § 8-107(7)

112. Plaintiff's commencement of a housing court case against NYCHA constitutes protected activity under the New York City Human Rights Law.

18

113.   NYCHA's revocation of Plaintiff's apartment transfer constitutes an adverse action.

114.   NYCHA revoked Plaintiff's apartment transfer only two weeks after Bronx Housing Court found in Plaintiff's favor in the housing court case, which establishes a presumptive causal connection between Plaintiff's protected activity and NYCHA's adverse action.

## ELEVENTH CLAIM FOR RELIEF
### *(Retaliation in Violation of New York Real Property Law, N.Y. Real Prop. Law § 223-b)*

115.   Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1-55 of this Complaint as if fully set forth herein.

116.   New York's Real Property Law § 223-b prohibits landlords from "substantially alter[ing] the terms of [a] tenancy in retaliation for . . . [a]ctions taken in good faith, by or in behalf of the tenant, to secure or enforce any rights under the lease or rental agreement, under [RPL § 235-b], or under any other law of the state of New York, or of its governmental subdivisions, or of the United States."

117.   Plaintiff's commencement of a housing court case constitutes protected activity under the New York Real Property Law § 223-b.

118.   NYCHA's revocation of Plaintiff's apartment transfer constitutes an adverse action.

119.   NYCHA revoked Plaintiff's apartment transfer only two weeks after Bronx Housing Court found in Plaintiff's favor in the housing court case, which establishes a presumptive causal connection between Plaintiff's protected activity and NYCHA's adverse action.

120.   NYCHA retaliated against Plaintiff for commencing a housing court case by revoking Plaintiff's apartment transfer.

## RELIEF REQUESTED

WHEREFORE, Plaintiff prays for judgment as follows:

121. Judgment declaring that NYCHA violated

    a. Title VIII of the Civil Rights Act of 1968 as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601 *et seq.*, and its implementing regulations;

    b. Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12181 *et seq.*;

    c. Section 504 of the Rehabilitation Act of 1974, 29 U.S.C. § 794;

    d. New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.*, and its implementing regulations;

    e. New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*, and its implementing regulations;

    f. New York Real Property Law § 223-b;

122. Injunctive relief requiring NYCHA to immediately provide reasonable accommodations to Plaintiff by installing a permanent wheelchair ramp at the subject premises or transferring Plaintiff to a comparable building in the Patterson Houses project on the ground floor;

123. Final judgment awarding Plaintiff actual, compensatory, and punitive damages for injuries and expenses incurred as a result of the violations set forth above in an amount to be determined at trial;

124. Reasonable attorney's fees, costs, and disbursements: and

125. Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Willie Espino, Jr. hereby demands a jury trial.

//

//

//

//

//

20

Dated: August 14, 2018

BRONX LEGAL SERVICES
Christopher R. Copeland
369 E. 148th Street, 2nd Floor
Bronx, New York 10455
(718) 928-3726

_____

Christopher R. Copeland
*Attorney for Plaintiff Willie Espino, Jr.*

21

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

WILLIE ESPINO, JR.,

Civ. Case No. 1:18-cv-9303

Plaintiff,

v.

NEW YORK CITY HOUSING
AUTHORITY,

Defendant.

_____/

**VERIFICATION**

STATE OF NEW YORK    )
         ss.:
COUNTY OF BRONX    )

  WILLIE ESPINO, JR., being duly sworn, deposes and says:

  1. I am the tenant-of-record in Apartment 5D at 414 Morris Avenue, Bronx, New York 10451, and I am the plaintiff in the above-referenced proceeding.

  2. I have read this Verified Complaint, and I affirm that the facts stated about me therein are true to the best of my knowledge.

_____
Willie Espino, Jr.

Sworn to be me before this 14 day of August 2018

_____

NOTARY PUBLIC

SYLVIA FIGUEROA
Notary Public, State of New York
No. 01FI6169450
Qualified in Bronx County
Commission Expires July 27, 20 19

2